**SPEARMON et al. v. THOMPSON et al.**
No. 13642.

Circuit Court of Appeals, Eighth Circuit.
April 19, 1948.

As Modified on Denial of Rehearing
June 1, 1948.

No. 2 of Railway Employes' Department of American Federation of Labor.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This action was instituted by four honorably discharged veterans of World War II to obtain rights they claim under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq. The facts were stipulated. The trial court denied relief. This appeal is from the judgment dismissing the petition on the merits.

Appellants Rhodes and Delozier entered the employment of the Missouri Pacific Railway Co., May 10, 1934, Spearmon on September 16, 1936, and Holmes on September 17, 1936. All were employed as carmen helpers. On July 1, 1942, the Railroad Company and the representative of the Railroad Company's carmen for the purpose of collective bargaining under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. (referred to in the stipulation and briefs as the System Federation) entered into an agreement by which advancement to the position of carmen mechanics could be made by apprentices and carmen helpers when all holding the classification of mechanic were working and there were no additional mechanics available with which to provide for additions made to the forces or with which to fill vacancies.[1] By the terms of this contract such advancements were to be made with due regard to seniority and qualifications for advancement.[2] Section 8 of the

G. D. Walker, Asst. U. S. Atty., of Helena, Ark. (James T. Gooch, U. S. Atty., of Little Rock, Ark., on the brief), for appellants.

Leffel Gentry, of Little Rock, Ark. (Henry Donham, of Little Rock, Ark., on the brief), for appellee Guy A. Thompson, Trustee, Missouri Pac. Ry. Co.

Richard R. Lyman, of Toledo, Ohio (E. L. McHaney, Jr., of Little Rock, Ark., on the brief), for appellees System Federation

[1] "1. Advancement to mechanics (carmen) may be made as hereinafter provided of apprentices, helper apprentices, regular helpers and freight car truckmen and oilers (employes holding seniority rights on carmen's seniority subdivision No. 5, Rule 25), but only when all mechanics (classes of employes holding seniority on carmen's seniority subdivision No. 6, Rule 25) are working (if furloughed, by mutual consent, will be considered as working under the terms of this agreement), and there are no additional qualified carmen available with which to provide for additions made to the forces or to fill vacancies.

\* \* \* \* \* \* \*

"6. Subsequent to the effective date of this agreement and until its termination, insofar as the application of Sections 1 to 9, inclusive, are concerned, if qualified mechanics are available such qualified mechanics will be employed in preference to the apprentices, helper apprentices and regular helpers temporarily advanced to mechanics and truckmen and oilers temporarily advanced to mechanics."

[2] "3. Advancement to service as mechanics of classes of employes designated in Sections (b) to (f) of paragraph 2 will be accomplished with due regard to their order of seniority, qualifications for advancement, etc., in their respective classifications. All selections being made jointly by the Shop Superintendent or Master Mechanic and Employes' Local Committee."

contract applied specifically to helpers, to which classification appellants all belonged. It is as follows:

"8. Regular helpers advanced, who, during the continuation of this agreement accumulate three years or more service as a mechanic, may thereafter continue in the mechanic's classification, seniority as such dating from the termination of the three year period of service as a mechanic, or they may then revert to their former position of regular helper unless jointly agreed by Shop Superintendent or Master Mechanic and Employes' Local Committee for their continuance in service as a mechanic."

The agreement of July 1, 1942, was made to permit the Railroad Company to obtain mechanics in larger numbers and from classifications not theretofore permissible under the terms of the contract between the System Federation and the Railroad prior to the amendment of July 1, 1942.[3]

Appellant Rhodes was advanced to the position of carman mechanic on November 2, 1942. Holmes and Spearmon were advanced to that position on November 6, 1942. Upon advancement each did the work of mechanics and each was paid the mechanic's rate. The contract provided, however, that they should not acquire seniority as mechanics for a period of three years.[4] Delozier was not advanced prior to his induction on October 5, 1942.

Spearmon was inducted into the armed forces November 25, 1942, Rhodes on November 27, 1942, and Holmes on March 4, 1944. Subsequent to the induction of appellants a number of carmen helpers were advanced to the position of carman mechanic who were not inducted into the armed forces, who accumulated three years' service as mechanics and were, after the lapse of exactly three years, permanently classified as mechanics.

When appellants returned from service with the armed forces all made timely applications for reinstatement and were reinstated in the positions they occupied at the time of their induction. Delozier was advanced to the position of carman mechanic shortly after his reinstatement. Thereafter it became necessary for the Railroad Company to reduce the number of carmen mechanics and appellants were all demoted to carmen helpers on March 30, 1946. The carmen helpers who were advanced to carmen mechanics after appellants were inducted into the armed forces and who had "accumulated three years' service" as mechanics were retained as mechanics in preference to appellants. It is stipulated that at the time of their reinstatement appellants were as well qualified to perform the duties which they were performing at the time of their induction as they were when inducted, and that they were downgraded to helper positions "not because of any failure on their part satisfactorily to perform the duties assigned to them as temporary or upgraded carmen (mechanics), but solely as a result of a reduction in respondent's forces and in accordance with the provisions of Clause 7[5] of the * * * agreement of July 1, 1942."

---

[3] The introductory paragraph of the agreement of July 1, 1942, was as follows:

"The War Production Program has created a shortage of skilled mechanics in the railroad industry and the normal application of rules governing the working conditions, etc. of Maintenance of Equipment Department employes—mechanics, helpers and apprentices—dated July 1, 1936, require certain modifications to cope with the situation, particularly insofar as this agreement is concerned to the filling of vacancies of Carmen."

[4] "5. Apprentices, helper apprentices and regular helpers temporarily advanced to service as mechanics will be paid mechanic's rate for such mechanic's service as is performed, but will not acquire seniority as such. They will retain and accumulate seniority in the class from which taken and all temporary service of apprentices as mechanics hereunder will be deemed equivalent to an equal number of days service of their apprenticeship."

[5] "7. In reduction of forces for any cause, apprentices, helper apprentices, regular helpers and truckmen and oilers temporarily assigned to mechanics will be reduced before qualified mechanics are laid off and all such reductions shall be in reverse order of their advancement as shown in paragraph 2, viz:

(a) Other regular helpers with less than four years seniority as a helper.

(b) Second year helper apprentices or regular helpers with four or more years seniority as a helper.

It was stipulated that under the provisions of Section 8 heretofore set out the practice was "to require three years' actual service in the temporary position before making the temporary classification permanent."

Appellants contend that the Selective Training and Service Act of 1940 entitles them to have the time they served with the armed forces treated as time on the job for seniority purposes. They further contend that the seniority so acquired while serving with the armed forces should be considered as time "accumulated" as mechanics with the result that they should retain their seniority over men who were advanced to mechanics after appellants were inducted.

The System Federation was granted permission to intervene in the District Court. It and the Railroad Company contend that appellants are not entitled to retain their senior positions over men advanced to mechanics after appellants were inducted because (1) the position of mechanic to which appellants were advanced prior to their induction was a temporary position within the meaning of the Selective Training and Service Act and hence was not such a position as that Act entitled them to be restored to, and (2) that the contractual provision to the effect that appellants should acquire no seniority as mechanics until they had accumulated three years' or more service as a mechanic controlled and required three years' actual service on the job with the result that upon their return and reinstatement they had accumulated seniority only as helpers while those who had succeeded appellants and remained on the job had, by reason of their three years' service on the job, become permanently classified as mechanics and had acquired seniority as such dating from their permanent classification as mechanics.

The trial court filed a carefully prepared memorandum opinion in which the conclusion was reached that the position which appellants Spearmon, Rhodes and Holmes occupied at the time of their induction was a temporary position to which they were not entitled to be restored.

The pertinent provisions of the Selective Training and Service Act of 1940 as amended, 50 U.S.C.A.Appendix, § 301 et seq. are as follows:

"Sec. 8(a) Any person inducted into the land or naval forces under this Act for training and service who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 3(b) shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. * * *

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service—

"(B) if such postition was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of active military service, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was ordered into such service, and shall not be discharged from such position without cause within one year after such restoration."

(c) Third year regular apprentices or regular helpers with four or more years senority as a helper.

(d) Third year helper apprentices.
(e) Fourth year regular apprentices.
(f) Freight car truckmen and oilers."

630

We are unable to agree that the positions Spearmon, Rhodes and Holmes left when they were inducted were "temporary positions" within the meaning of the Act. It is a reasonable assumption that the provision that an ex-serviceman who left a temporary position to enter the armed forces should not be entitled to be restored to it upon his return was inserted in the Act to protect an employer from the necessity of creating a useless job to give to a former employee merely because there was a transitory temporary need for such a job at one time and the ex-serviceman happened to be occupying it at the time of his induction. The position of mechanic, involved here, had been in existence for many years. It was in existence when the contract was made between the System Federation and the Railroad in 1936 and is mentioned in that contract. It continued in existence from that time (and probably from an even earlier date) up to the present time. It apparently still exists. The supplementary agreement of July 1, 1942, did not abolish it. On the contrary, that agreement explicitly protected those holding seniority in that classification from having upgraded helpers attain any seniority as mechanics for a period of three years. The position was not one which may properly be characterized as "temporary" within the meaning of the Act

But the more troublesome question remains as to whether appellants were entitled to have the time they spent with the armed forces applied toward seniority in the mechanic's classification or merely as helpers. Much stress is placed by appellees upon the contractual provision contained in paragraph 8 of the July 1 agreement, heretofore quoted, that seniority as a mechanic should not begin until three years' service had been accumulated in the position of mechanic. But a contractual provision denying an ex-serviceman seniority to which he is entitled under the Selective Training and Service Act is invalid. Fishgold v. Sullivan Drydock & Repair Corporation et al., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110; Trailmobile v. Whirls, 331 U.S. 40, 67 S.Ct. 982. The contract therefore cannot deprive appellants of their seniority as mechanics if in fact they were mechanics at the time of their induction. Appellees contend that the contract required three years' service on the job as a prerequisite to the attainment of the degree of proficiency which would entitle them to classification as mechanics. If proficiency was really the test, no Act of Congress could supply it and these three appellants would have been helpers when they were inducted and would still be "helpers" when they were reinstated. But was proficiency the test contemplated by the contract? Or was the qualification for permanent classification as a mechanic attainable from the lapse of time, or in other words, seniority?

Paragraph 1 of the July 1st agreement does not contain any requirement for "qualification". As heretofore noted, it simply provides that helpers and apprentices may be advanced to mechanics when others who have already attained that classification, nomenclatured as "qualified mechanics", are not available. Paragraph 2 provides the order of seniority for advancement to mechanics from the various inferior classifications. Paragraph 3 merely emphasizes the importance of seniority in advancement by providing that advancements to service as mechanics should be with due regard to "order of seniority" and "qualification for advancement in their respective classifications". Paragraphs 5, 6 and 7 all deal with seniority as such. In paragraphs 6 and 7 appears the first reference to a "qualified" mechanic. The term is then used to identify those who have theretofore been classified as mechanics as distinguished from those who may be advanced to the position under the agreement of July 1st. And the distinction is made for the sole purpose of protecting the seniority of the former. In paragraph 8 there is no word connoting proficiency as a test of qualification to serve as a mechanic. On the contrary the "qualification" for classification as a mechanic is that the helper advanced to the position of mechanic shall "accumulate three years' or more service as a mechanic" before seniority as a mechanic may begin.

The language of the contract does not support appellees' argument that proficiency was to be the test for determining classifica-

tion as a mechanic. Under the contract, immediately upon advancement the helper did the work of a mechanic and received a mechanic's wages. He was to be held in the position of a temporary mechanic only for the purpose of protecting the seniority rights of others already classified as mechanics, who might then be on furlough.

In the stipulation of facts prepared for the purpose of this controversy there is frequent reference to appellants' advancement as a "temporary advancement" but again there is no language which expressly or by necessary inference requires the conclusion that proficiency was the test to be applied in determining whether a helper "temporarily advanced" should attain permanent classification as a mechanic. It is stipulated that each of the helpers who were advanced to mechanics after appellants were inducted were "permanently" classified as mechanics almost exactly three years to the day after their advancement. That does not denote proficiency as the test of classification. Nor does the stipulated fact that it was the practice "to require three years' actual service in the temporary position before making the temporary classification permanent", aid appellees. The practice referred to was the practice contemplated by the contract. If the contract contemplated a deprivation of ex-servicemen's rights under the Act of Congress, the following of the illegal practice will not clothe the contract or the practice with legality.

We conclude from a careful consideration of the contract, the stipulated facts, the arguments advanced by counsel, and with due respect for the conclusion of the trial judge, that it was not the intention of the System Federation, representing these appellants as members, and the Railroad Company to contract that proficiency should measure the right of appellants to advance in seniority from their "temporary classification" as mechanics to that of a permanent classification as such. Presumably, as appellees argue, the helpers who were advanced to the position of mechanic and remained at that work while appellants were with the armed forces were better mechanics as a result of their experience on the job than appellants were at the time the latter were

demoted. That should be true if experience is of any value. But if proficiency is to be the test for advancement then the entire system of seniority would be disturbed. Proficiency results from individual attainment without necessary regard to the lapse of time. Seniority advances with the calendar without necessary regard to degree of proficiency.

■ Since appellants Spearmon, Rhodes and Holmes, by the terms of the contract of July 1st, had to be and were qualified as mechanics before advancement to that position, and since they were advanced to that position before induction and were serving therein at the time of induction, they were entitled to acquire seniority as mechanics. In the language of the Supreme Court in Fishgold v. Sullivan Drydock & Repair Corporation, 328 U.S., loc. cit. 284, 66 S.Ct. loc. cit. 1110, 90 L.Ed. 1230, 167 A.L.R. 110, "[they do] not step back on the seniority escalator at the point [they] stepped off. [They] step [s] back on at the precise point [they] would have occupied had [they] kept [their] position continuously during the war."

■ It is conceded that the demotion had the legal effect of a discharge within one year of these appellants' reinstatement. The judgment is therefore reversed and remanded as to Spearmon, Rhodes and Holmes with directions to enter judgment for them in accordance with the prayer of their petition. There has been no claim for relief beyond the one-year period fixed by the Act. And since appellants' right under the Act to benefits beyond that period has not been briefed or argued we express no opinion on that question. See Trailmobile v. Whirls, 331 U.S. 40, 67 S.Ct. 982, supra. The judgment to be entered should therefore be limited to such benefits as these appellants are entitled to in accord with the conclusions hereinabove stated, to the extent such benefits would accrue within the period of one year fixed by the Act.

■ As to Delozier, the judgment is affirmed. Although it is stipulated that had he remained in the position of helper until November 2, 1942, he would on that date have been advanced to the position of me-

chanic, it is a conceded fact that he occupied the position of helper at the time of his induction. The seniority which accrued to him during the time he served with the armed forces was seniority in the position of helper and not as mechanic. Since he was restored to the position of helper upon his return, he can have no just complaint that his rights under the Selective Training and Service Act have not been fully accorded to him.

It is agreed that the order of the trial court taxing the costs of these proceedings against appellants was not permissible under Sec. 308(e) of the Selective Training and Service Act. The order taxing costs against appellants is reversed.