UNITED STATES ex rel. Russell K. ADAMS, et al., Plaintiffs-Appellants,

v.

GENERAL MOTORS CORPORATION, Defendant-Appellee.

No. 75–1018.

United States Court of Appeals, Sixth Circuit.

Argued June 5, 1975.

Decided Oct. 8, 1975.

---

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., Rex E. Lee, Asst. Atty. Gen., Civ. Div., William Kanter, Thomas S. Moore, John K. Villa, App. Section, Civ. Div., Dept. of Justice, William J. Kilberg, Solicitor of Labor, Bobbye D. Spears, Associate Solicitor, William H. Berger, Dept. of Labor, Washington, D. C., for plaintiffs-appellants.

Russell J. Thomas, Jr., General Motors Corp., Detroit, Mich., for defendant-appellee.

Before WEICK, LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

This appeal is from summary judgment for the defendant in consolidated actions brought by the United States on behalf of eight veterans who claim that upon their return from military service their employer denied them rights which are guaranteed by Section 9 of the Selective Service Act of 1967 as amended, (the Act), 50 U.S.C. App. § 459. The pertinent provisions of Section 9 appear as an appendix to this opinion.

. Each of the persons for whom relief was sought began his employment with General Motors (GM) as an unskilled worker. Pursuant to the terms of the collective bargaining agreement (the agreement) in effect between GM and the union representing its employees, GM was permitted to select unskilled

workers from time to time for participation in an eight-year program leading to journeyman status in various skilled trades classifications. This is designated in the agreement as the "Employe-in-Training" (E.I.T.) program. A pay raise accompanied the transfer to E.I.T. status, and the worker so transferred thereafter performed the work of the skilled trades classification to which he was assigned, along with journeymen in the same classification. The agreement further provided for a change in status to "Employe-in-Training-Seniority" (E.I.T.S.) after completion of at least four years "of work" as an E.I.T. The provisions appeared in Sections 155 and 156 of the collective bargaining agreement:

(155) An employe transferred to a skilled trades classification in which he does not hold journeymen status, or a non-journeyman new-hire assigned to a skilled trades classification, shall be identified in the skilled trades classification in which he is working as an employe-in-training (e. g., "Lathe Operator (E.I.T.)", "Tool Maker (E.I.T.)") until his status is changed to an employe-in-training-seniority (E.I.T.S.) or he is reclassified as a journeyman in such classification in accordance with provisions of Paragraph (166) or (167).

(156) An employe, whose period of training is for more than four years, who completes or has completed at least four years of work as an employe-in-training (E.I.T.) in any one skilled trades classification in the plant, shall be identified in such skilled trades classification as an "Employe-in-Training-Seniority" (e. g., "Lathe Operator (E.I.T.S.)", "Tool Maker (E.I. T.S.)"), until classified as a journeyman in such classification in accordance with Paragraph (166) or (167), except as provided in Appendix C.

The change of an employee's status or identification from E.I.T. to E.I.T.S. did not involve any change in duties or a wage increase. However, such an employee did acquire additional protection from layoff at the time of this change

as shown by a comparison of Sections 175 and 176 of the agreement:

(175) An employe-in-training (E.I.T.) who has not qualified as a journeyman may be retained in his classification until displaced by:

(1) A fully qualified journeyman in the plant;

(2) A newly graduated apprentice;

(3) An employe-in-training-seniority (E.I.T.S.);

(4) A reduction in force.

(176) An employe-in-training-seniority (E.I.T.S.) may be retained in the skilled classification in which he is classified as an employe-in-training-seniority (E.I.T.S.) until displaced by:

(1) An employe with more seniority in the classification;

(2) A reduction in force.

Each of the plaintiffs in this action had been assigned to a skilled trades classification and was working as an E.I.T. at the time he left the employment of GM for military service. Upon his return to work at GM each was returned to E.I.T. status. However, before any of the plaintiffs had completed four years of actual work at GM and attained E.I.T.S. status a reduction in force took place and all eight were displaced from their skilled trades classification jobs, with a consequent loss of wages and of time credited toward becoming journeymen. On the other hand, non-veterans who had entered the E.I.T. program at later dates than the plaintiffs were retained in their skilled trades classification jobs because they had achieved E.I. T.S. status.

GM argues that Appendix C of the agreement gave the plaintiffs the protection guaranteed by the Act in providing that—

An employe whose training in the skilled trades was interrupted by a leave of absence [for military service] . . . and who thereafter qualifies for status as an employe-in-training-seniority (E.I.T.S.) or is reclassified as

a journeyman in the skilled trades, shall, at such time, be given the same E.I.T.S. date or journeyman seniority date as he would have received if he had not been on such leave.

It is maintained on behalf of the plaintiffs that the quoted provision did not adequately protect them. The dispute in this case, they assert, concerns the date they qualify for E.I.T.S. status, not the seniority date which will be assigned "at such time" as the qualification occurs. They are not claiming that their time in military service should be counted toward the eight-year requirement for advancement to journeymen. They concede that they must perform eight years of actual work for GM in combined E.I.T. and E.I.T.S. status to receive this promotion. However, they argue that GM's refusal to count their time in military service toward the achievement of E.I.T.S. status has deprived them of the opportunity to continue their progression toward journeyman rating solely because of their absence on military duty and has resulted in their being displaced by non-veteran employees who overtook them while they were performing military service. This is expressed in the prayer of the identical amended complaints—

(a) That defendant be ordered to grant plaintiff the priority status with regard to availability of work which he would have received had he remained continuously employed during the period of his military service  . . . .

The district court, sitting without a jury, concluded from stipulated facts that "the right to E.I.T.S. status is derivative upon actual on-the-job training, and not upon the mere passage of time." The stipulation of facts discloses that E.I.T. and E.I.T.S. employees in the same skilled trades classifications "perform essentially the same types of work" and that individual work assignments were based on ability to do a particular task without reference to the status of the employee. Furthermore, receipt of E.I.T.S. status was not contingent upon successful completion of a proficiency test (Stip. XV) and "[l]ess than one percent, if any, of the employees who have been in the E.I.T. program have been demoted from that program to their former unskilled classifications for lack of progress in the skilled classification in which they were employes-in-training." (Stip. XVI). Finally, it was stipulated that if the plaintiffs had remained continuously employed by GM rather than entering military service they would have achieved E.I.T.S. status by August 1, 1971 (Stip. XVII), which was prior to their being removed from the E.I.T. program because of reduction in forces.

In *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), the Supreme Court, in dealing with veterans' reemployment rights under the Act stated—"Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." 328 U.S. at 284–85, 66 S.Ct. at 1111. This holding was subsequently codified by Congress as Section 9(c)(2) of the Act, 50 U.S.C. App. § 459(c)(2). The Court made it clear in *Aeronautical Lodge v. Campbell,* 337 U.S. 521, 526–27, 69 S.Ct. 1287, 1290, 93 L.Ed. 1513 (1949), that "Congress was not creating a system of seniority but recognizing its operation as part of the process of collective bargaining" in providing for restoration of returning veterans to their former positions "without loss of seniority," as provided in Section 459(c)(1). Thus we must determine whether under GM's interpretation of the agreement the plaintiffs lost seniority rights by reason of their absence for military service which they otherwise would have acquired under the agreement. This question is answered in the affirmative by the stipulation of facts recited above.

█ If the plaintiffs had remained continuously employed in the E.I.T. program rather than entering upon military duty they would have achieved E.I.T.S. status before the reduction in forces

caused them to be dropped from the program and, obviously, before any of the non-veterans who entered E.I.T. after their date of entrance. The only change in status effected by moving from E.I.T. to E.I.T.S. was that the employee gained additional protection from layoff. As an E.I.T., he could be displaced by a person in any of three listed categories, while as an E.I.T.S. he could be displaced only by "[a]n employe with more seniority in the classification." Agreement, Section 176. Such lay-off protection is a classic "perquisite of seniority" which is protected by the Act. *See Accardi v. Pennsylvania R. Co.,* 383 U.S. 225, 230, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966). As the Court said in *Fishgold,* ". . . these provisions [now Section 9(b) and (c)] guarantee the veteran against loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence." 328 U.S. at 285, 66 S.Ct. at 1111.

■ The district court relied upon cases which distinguish between "those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment" and so-called "earned benefits" which are based "on the actual total service rendered to the employer by the employee." *See McKinney v. Missouri-Kansas-Texas R. Co.,* 357 U.S. 265, 272, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958); *Foster v. Dravo Corp.,* 420 U.S. 92, 95–97, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975), and *Accardi v. Pennsylvania R. Co., supra,* 383 U.S. at 230, 86 S.Ct. 768. The district court concluded that the "prevailing purpose" of the requirement of "at least four years of work" as an E.I.T. for identification as an E.I.T.S. (agreement, Section 156) "is not only to promote and increase the employee's skill and proficiency at the job through experience, but also to justify the added protection from lay-offs, etc., offered to better qualified employes-in-training." Summary judgment

was granted primarily in reliance upon *Tilton v. Missouri Pacific R.R. Co.,* 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), where the Court stated:

> A returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period. But upon satisfactorily completing that period, as petitioners did here, he can insist upon a seniority date reflecting the delay caused by military service. *Id.* at 181, 84 S.Ct. at 602.

This language would control and be a proper basis for denial of plaintiffs' claims if they were seeking advancement to journeyman status without performing eight years of actual work for GM. However, it has no application to the claim that military service must be counted in determining the time of achievement of E.I.T.S. status. In receiving an E.I.T.S. designation the employee does not receive a "promotion." Rather, he acquires layoff protection as a perquisite of his special seniority within the E.I.T. program.

On appeal GM relies sequarely upon the language of Section 156 of the agreement which requires at least four years "of work" for advancement from E.I.T. to E.I.T.S. status. It is argued that this is a requirement of more than mere continuing status as an employee and that "the Company properly insisted that these veterans complete the work requirements of the contract before advancing to E.I.T.S. status." Primary reliance is placed upon *Foster v. Dravo Corp.,* 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975), and the *Tilton* case, which we have previously discussed.

In *Foster v. Dravo Corp.,* the returned veteran was claiming full vacation benefits for the years he was in military service. There the collective bargaining agreement required that an employee receive earnings during 25 weeks of the previous year in order to qualify for vacation pay in any given year. The Court

concluded that the 25-week provision constituted a substantial work requirement and that the vacation benefits provided for by the contract "were intended as a form of short-term compensation for work performed." 420 U.S. at 100, 95 S.Ct. at 884. Finding that the veteran had failed to show "that vacations were intended to accrue automatically as a function of continued association with the company," the Court held that the bona fide work requirement of the contract had not been met. *Id.* at 101, 95 S.Ct. 879, 884. Under these circumstances Section 9 of the Act was not violated by the refusal of the employer to grant full vacation rights to the veteran for the years he spent in service.

The present case is clearly distinguishable from *Foster.* This court has held many times that vacation with pay constitutes additional wages for services already performed. *See International Association of Machinists, etc., Local 2369 v. Oxco Brush Division,* 517 F.2d 239 (6th Cir. 1975); *Smith v. Kingsport Press, Inc.,* 366 F.2d 416 (6th Cir. 1966). The collective bargaining agreement in *Foster, supra,* clearly established the requirement that services be performed by employees in one year as a condition of entitlement to vacation benefits in the succeeding year. The use of the phrase "four years of work" in the agreement under consideration in the present case does not necessarily carry the same implication that actual services were required for an E.I.T. employee to gain the "S" classification. When this language is considered in light of the stipulated facts that virtually every employee who has entered the E.I.T. program and remained in it for four years has received the E.I.T.S. classification, that no wage increase or change in duties accompanied the new status, that no proficiency rating was required and no managerial discretion was involved, and that the only benefit of the status was additional security against layoff we are led to the conclusion that actual performance on the job was not a condition for moving from E.I.T. to E.I.T.S.

In essence, GM seeks to justify its policy on the ground that E.I.T.S. status protects its more experienced workers from layoff. This might be said of all seniority systems. Presumably an employer benefits from an agreement whereby workers longest on the job are the last to be laid off. In the absence of evidence that movement to E.I.T.S. status was dependent on any achievement of proficiency or employer discretion, a returning veteran may not be denied the benefit of the "escalator principle" because of a general benefit to the employer of keeping experienced workers.

The appendix to the agreement which provided that after E.I.T.S. or journeyman status had been achieved by returning veterans they were given credit for military service in computing their seniority dates complied with one requirement of the Act as it related to overall seniority in particular skilled trades classifications. However, the parties to the agreement created a special seniority within the E.I.T. program. This seniority is protected by Section 9(c)(2) of the Act which requires that the returning veteran be restored "in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

▮ In reviewing this case we are not bound by the "clearly erroneous" rule. All of the material facts were stipulated and the district court held that the defendant was entitled to judgment as a matter of law. We conclude that this was an error of law. *See Hatton v. Tabard Press Corp.,* 406 F.2d 593, 599 (2d Cir. 1969). The judgment of the district court is reversed, and the case remanded for entry of partial summary judgment for the plaintiffs in accordance with their motion therefor. Costs on appeal to the plaintiffs.

## APPENDIX

### § 459.   Separation from service

#### (a) Certificate recording proficiency and merit; physical examination

Any person inducted into the armed forces under this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix] for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 4(b) [sections 454(b) of this Appendix] shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained.   In addition, each such person who is inducted into the armed forces under this title [said sections] for training and service shall be given a physical examination at the beginning of such training and service, and upon the completion of his period of training and service under this title [said sections], each such person shall be given another physical examination and, upon his written request, shall be given a statement of physical condition by the Secretary concerned: *Provided,* That such statement shall not contain any reference to mental or other conditions which in the judgment of the Secretary concerned would prove injurious to the physical or mental health of the person to whom it pertains: *Provided further,* That, if upon completion of training and service under this title [said sections], such person continues on active duty without an interruption of more than seventy-two hours as a member of the Armed Forces of the United States, a physical examination upon completion of such training and service shall not be required unless it is requested by such person, or the medical authorities of the Armed Force concerned determine that the physical examination is warranted.

#### (b) Reemployment rights

In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

(A) if such position was in the employ of the United States Government, its Territories, or possessions, or political subdivisions thereof, or the District of Columbia, such person shall—

(i) if still qualified to perform the duties of such position, be restored to such position or to a position of like seniority, status, and pay;  or

(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of the employer, be restored to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case;

(B) if such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay;  or

(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case,

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

(C) if such position was in the employ of any State or political subdivision thereof, it is declared to be the sense of the Congress that such person should—

(i) if still qualified to perform the duties of such position, be restored to such position or to a position of like seniority, status, and pay; or

(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of the employer, be restored to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case.

*(c) Service considered as furlough or leave of absence*

(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

(3) Any person who holds a position described in paragraph (A) or (B) of subsection (b) [of this section] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces of the United States.

*(d) Jurisdiction of district court; United States attorney to act for claimant*

In case any private employer fails or refuses to comply with the provisions of subsection (b), subsection (c)(1), subsection (c)(3) or subsection (g) [of this section], the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action: *Provided,* That any such compensation shall be in addition to and shall not be deemed to diminish any of the benefits of such provisions. The court shall order speedy hearing in any such case and shall advance it on the calendar. Upon application to the United States attorney or comparable official for the district in which such private employer maintains a place of business, by any person claiming to be entitled to the benefits of such provisions, such United States attorney or official, if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof specifically to require such employer to comply with such provisions: *Provided,* That no fees or court costs shall be taxed against any person who may apply for such benefits: *Provided further,* That only the employer shall be deemed a necessary party respondent to any such action.