Dennis COHN, Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant,

and

System Federation No. 105, Railway Employees' Dept., AFL–CIO, Intervenor.

Daniel J. MATHERS, Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant,

and

System Federation No. 105, Railway Employees' Dept., AFL–CIO, Intervenor.

Ralph E. GOSNELL, Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant,

and

System Federation No. 105, Railway Employees' Dept., AFL–CIO, Intervenor.

Harry F. MILES, Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant,

and

System Federation No. 105, Railway Employees' Dept., AFL–CIO, Intervenor.

Thomas P. MEDUNA, Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant,

and

System Federation No. 105, Railway Employees' Dept., AFL–CIO, Intervenor.

Civ. Nos. 75–0–247 to 75–0–251.

United States District Court, D. Nebraska.

Feb. 11, 1977.

Daniel E. Wherry, U. S. Atty., Omaha, Neb., William J. Kilberg, Sol. of Labor, Tedrick A. Housh, Jr., Regional Sol., Steven P. Denton, Kansas City, Mo., and William H. Berger, U. S. Dept. of Labor, Washington, D. C., for plaintiffs.

John J. Marchant, Omaha, Neb., for defendant.

Michael S. Wolly, Washington, D. C., for intervenor.

## MEMORANDUM

DENNEY, District Judge.

These consolidated cases are before the Court for decision on the merits upon the parties' stipulation of facts. In accordance with Rule 52(a), Fed.R.Civ.P., the Court makes the following findings of facts and conclusions of law.

The United States Attorney for the District of Nebraska instituted these actions under the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021 et seq., on behalf of plaintiffs, Dennis Cohn, Daniel Mathers, Ralph Gosnell, Harry Miles and Thomas Meduna.[1] Jurisdiction is invoked pursuant to 38 U.S.C. § 2022. The issue presented is whether plaintiffs, upon their return from military service and reinstatement to employment as Rule 154 carmen, are entitled to have their time spent in the services credited toward the four years of work experience required by the collective bargaining agreement before Rule 154 carmen can obtain regular carmen status and seniority with additional layoff protection and benefits.

### I.

Plaintiffs were employed by Union Pacific Railroad as Rule 154 carmen prior to their military service. Rule 133 of the applicable collective bargaining agreement provides for the qualifications of carmen:

Any man who has served an apprenticeship or has had four years' practical experience at carmen's work, and who with the aid of tools, with or without drawings, can lay out, build or perform the work of his craft or occupation in a mechanical manner, shall constitute a carman.

Rule 154 provides as follows:

In the event of not being able to employ carmen with four years' experience, regular and helper apprentices will be advanced to carmen in accordance with their seniority. If more men are needed helpers will be promoted. If this does not provide sufficient men to do the work, men who have had experience in the use of tools may be employed. They will not be retained in service when four-year carmen become available.

1. 38 U.S.C. § 2022 authorizes the United States Attorney to act as attorney for plaintiffs.

Rule 154 carmen do not acquire a right to establish seniority in the carmen's group until they have accumulated 1040 days experience at carmen's work as Rule 154 carmen, but acquire seniority only among the active group of Rule 154 carmen. The parties have stipulated that seniority as a carman dates from the time an employee first performed service on a regular, permanent assignment to a position as a carman, which position may only be acquired when he first becomes qualified under Rule 133 for regular or permanent assignment to a position as carman. Defendant and intervenor have, however, by agreements dated December 3, 1955, and June 6, 1956, provided retroactive seniority status for Rule 154 carmen whose employment was interrupted by military service for the United States. These agreements provide that, upon completion of the 1040 day period, a Rule 154 carman whose 1040 day period is interrupted by military service will be granted a seniority date as a journeyman carman adjusted to extend him credit retroactively for those work days he missed as a result of his military service and also provide that, if a Rule 154 carman performs work similar to carman's work while in military service, the time spent in the performance of such work will be credited towards the completion of that employee's 1040 day period.

Plaintiffs had accumulated a certain number of 1040 days' experience at carmen's work prior to entering the military. Upon timely application for reemployment after discharge from the Armed Forces, plaintiffs were reemployed by Union Pacific Railroad and, in accordance with the 1040 days work requirement, they resumed progress towards the attainment of the 1040 days necessary to obtain journeyman status and the concomitant established of a seniority date.

On December 17, 1974, plaintiffs were laid off because of lack of work. The parties have stipulated that if the time plaintiffs had spent in the military had instead been spent in the performance of work as Rule 154 carmen in defendant railroad's employ without material interruption on account of sickness, furlough or leave of absence, plaintiffs would not have been laid off on December 17, 1974, because they would have completed the 1040 day requirement and achieved journeyman status sooner than journeyman carmen who were not laid off.

## II.

At issue in these cases is the right of each plaintiff under the Vietnam Era Veterans' Readjustment Assistance Act of 1974 to have his seniority date in the skilled trade classification established "in such manner as to give such person such status in his employment as he would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment or reemployment."[2] 38 U.S.C.

---

**2.** 38 U.S.C. § 2021 (formerly 50 U.S.C. App. § 459) provides in relevant part as follows:

(a) In the case of any person who is inducted into the Armed Forces of the United States under the Military Selective Service Act (or under any prior or subsequent corresponding law) for training and service and who leaves a position (other than a temporary position) in the employ of any employer in order to perform such training and service, and (1) receives a certificate described in section 9(a) of the Military Selective Service Act (relating to the satisfactory completion of military service), and (2) makes application for reemployment within ninety days after such person is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

(B) if such position was in the employ of a State, or political subdivision thereof, or a private employer, such person shall—
(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

(b)(1) Any person who is restored to or employed in a position in accordance with the provisions of clause (A) or (B) of subsection (a) of this section shall be considered as having been on furlough or leave of absence during such person's period of training and service in the Armed Forces, shall be so restored or reemployed without loss of seniority, shall be entitled to participate in insurance or other bene-

§ 2021(b)(2). This provision expressly incorporates the principle announced by the Supreme Court in *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284–285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946), that "[the reemployed veteran] does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during [his military service]. (Citations omitted.)" *See Montgomery v. Southern Electric Steel Co.*, 410 F.2d 611, 614 (5th Cir. 1969). The Supreme Court reaffirmed the "escalator principle" under the 1940 Act in *Oakley v. Louisville & N.R. Co.*, 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87 (1949), and expanded upon this principle in *McKinney v. Missouri-Kansas-Texas Railroad*, 357 U.S. 265, 271–72, 78 S.Ct. 1222, 1226, 2 L.Ed.2d 1305 (1958):

> The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment.
>
> Thus on application for re-employment a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer.

A crucial issue in these cases is therefore whether "advancement depends essentially upon continuing employment" or whether "the exercise of management discretion [is] a prerequisite to promotion." *Tilton v. Missouri Pacific R.R.*, 376 U.S. 169, 179, 84 S.Ct. 595, 601, 11 L.Ed.2d 590 (1964). In *Tilton*, the Court explained further what "automatic advancement" means:

> It would be virtually impossible for a veteran to show . . . that it was absolutely certain, "as a matter of foresight" when he entered military service, that all circumstances essential to obtaining an advancement in status would later occur. To exact such certainty as a condition for insuring a veteran's seniority rights would render these statutorily protected rights without meaning. *Id.* at 180, 84 S.Ct. at 602.

The Court specifically held that

> [a] returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period. But upon satisfactorily completing that period, as petitioners did here, he can insist upon a seniority date reflecting the delay caused by military service.

The resolution of these consolidated cases therefore turns upon whether the 1040 days of work experience is a training period to promote the Rule 154 carmen's skill and proficiency after which they receive actual promotions to carmen or simply an arbitrary period of time, after the completion of which Rule 154 carmen receive seniority and additional layoff protection and benefits. With this framework in mind, the Court turns to the facts of these cases.

### III.

The parties have stipulated to the following facts:

A. That during the plaintiffs' completion of their 1040 day service periods, there existed no program of formalized instruction or training on a group or individual basis; rather, the plaintiffs learned how to perform the tasks assigned by observing the performance of such tasks by more experienced carmen, and by receiving from such more experienced carmen additional instruction/assistance as was necessary;

B. That plaintiffs were not required to pass a proficiency test at any stage in their employment as Rule 154 carmen or before obtaining the journeyman status.

fits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration or reemployment.

C. That upon achieving journeyman status Rule 154 carmen receive no increase in wages, because pursuant to Rule 154 they are paid the same wage as journeyman while performing carmen's work;

D. That upon completion of the 1040 day work requirement and attainment of journeyman status, a Rule 154 carman experiences no change in duties on the job;

E. That in the performance of tasks assigned, plaintiffs worked with journeyman carmen and other Rule 154 carmen alike;

F. That there are approximately eight (8) different job classifications within the craft or class of carmen; that a Rule 154 carman is not required to be proficient in or exposed to all types of work encompassed by these job classifications before obtaining journeyman status; that while Rule 154 does not so require, both the defendant railroad and defendant union informally encourage Rule 154 carmen to exercise their bidding opportunities so that they might become exposed to as many different types of work encompassed by these job classifications as possible and thereby increase their overall proficiency in the craft or class of carmen;

G. That these plaintiffs did each respectively possess upon and after the time that each was employed as Rule 154 carmen, the ability and skill to perform in a reasonably satisfactory manner the work to which each was assigned by defendant railroad's supervision, both prior and subsequent to their respective military service, and that such work to which they were assigned and in which they did engage as Rule 154 carmen was within the category or classification of work performed by journeyman carmen (mechanics) employed by defendant railroad at said location. That each of said plaintiffs received while employed and engaged as Rule 154 carmen the prevailing minimum mechanic's rate of pay as provided by the collective bargaining agreements referred to in this stipulation and the wage adjustments made from time to time;

H. At no time has an employee of defendant railroad been accorded permanent classification and seniority status as a journeyman carman unless and until he completes an apprenticeship or accumulated 1040 days (1160 days prior to September 1, 1949) of actual working experience at the work of carmen.

In *Spearmon v. Thompson*, 167 F.2d 626 (8th Cir. 1948), *cert. denied sub nom. Thompson v. Spearmon*, 335 U.S. 822, 69 S.Ct. 44, 93 L.Ed. 376 (1948), the Eighth Circuit recognized that if a collective bargaining agreement "required three years' service on the job as a prerequisite to the attainment of the degree of proficiency which would entitle [them] to classification as mechanic[s]", plaintiffs, carman mechanics, would not have prevailed. 167 F.2d at 630. Defendant and intervenor therefore argue that, absent some showing that the 1040 day work period was established for some purpose other than the development of proficiency, plaintiffs are not entitled to relief. Relying upon the facts that since at least September, 1948, no person has been regarded as a qualified carman until he has served an apprenticeship or has had four years' practical experience at carmen's work, and that days missed for any reason are not counted in the 1040 day computation, defendant and intervenor argue that the performance of 1040 days of carmen's work is a proficiency requirement.

In response, plaintiffs argue that time on the job does not necessarily equal proficiency (*Spearmon v. Thompson, supra*), and that "there can be no serious contention that the requirement of actual service was designed to reward proficiency acquired through experience". *Borges v. Art Steel Co.*, 246 F.2d 735, 739 (2nd Cir. 1957). *See also Hatton v. Tabard Press Corp.*, 406 F.2d 593 (2nd Cir. 1969); *Moe v. Eastern Air Lines, Inc.*, 246 F.2d 215, 220 (5th Cir. 1957), *cert. denied*, 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958). Principal reliance is placed upon the recent case of *Adams v. General Motors Corp.*, 525 F.2d 161 (6th Cir.

1975), a case plaintiffs mistakenly assert as factually indistinguishable. The plaintiffs in *Adams* were selected to participate in an eight-year program leading to journeymen status and various trade classification. After four years in the program, an employee acquired additional protection from layoffs with an award in change of status. As in the case at bar, the change of status did not involve any change in duties or increases in wages.

Defendant in *Adams* relied upon *Foster v. Dravo Corp.*, 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975), which the Sixth Circuit found distinguishable.

In *Foster v. Dravo Corp.*, the returned veteran was claiming full vacation benefits for the years he was in military service. There the collective bargaining agreement required that an employee receive earnings during 25 weeks of the previous year in order to qualify for vacation pay in any given year. The Court concluded that the 25-week provision constituted a substantial work requirement and that the vacation benefits provided for by the contract "were intended as a form of short-term compensation for work performed." 420 U.S. at 100, 95 S.Ct. at 884. Finding that the veteran had failed to show "that vacations were intended to accrue automatically as a function of continued association with the company," the Court held that the bona fide work requirement of the contract had not been met. *Id.* at 101, 95 S.Ct. 879, 884. Under these circumstances Section 9 of the Act was not violated by the refusal of the employer to grant full vacation rights to the veteran for the years he spent in service.

The present case is clearly distinguishable from *Foster*. This court has held many times that vacation with pay constitutes additional wages for services already performed. *See International Association of Machinists, etc., Local 2369 v. Oxco Brush Division*, 517 F.2d 239 (6th Cir. 1975); *Smith v. Kingsport Press, Inc.*, 366 F.2d 416 (6th Cir. 1966). The collective bargaining agreement in *Foster, supra,* clearly established the requirement that services be performed by employees in one year as a condition of entitlement to vacation benefits in the succeeding year. The use of the phrase "four years of work" in the agreement under consideration in the present case does not necessarily carry the same implication that actual services were required for an E.I.T. employee to gain the "S" classification. When this language is considered in light of the stipulated facts that virtually every employee who has entered the E.I.T. program and remained in it for four years has received the E.I.T.S. classification, that no wage increase or change in duties accompanied the new status, that no proficiency rating was required and no managerial discretion was involved, and that the only benefit of the status was additional security against layoff we are led to the conclusion that actual performance on the job was not a condition for moving from E.I.T. to E.I.T.S. . 525 F.2d at 165–166.

Unlike *Adams*, the "four years practical experience" in the agreement under consideration herein does require actual service. (Stip. Part IV, ¶ E). However, this Court also finds the present case distinguishable from *Foster* in that it cannot be argued that the seniority accorded carmen, like the vacation benefits provided for by the contract in *Foster*, "[was] intended as a form of short-term compensation for work performed." 420 U.S. at 100, 95 S.Ct. at 884.

■ Although defendant and intervenor place great emphasis on the fact that 1040 days of actual work experience is required, the Court does not find this dispositive. The court in *Adams* concluded that

[i]n the absence of evidence that movement to E.I.T.S. status was dependent on any achievement of proficiency or employer discretion, a returning veteran may not be denied the benefit of the "escalator principle" because of a general benefit to the employer of keeping experienced workers. *Id.* at 166.

While the court's placement of burden of proof upon the defendant is questionable[3], the test of "proficiency or employer discretion" is founded in sound logic and prior judicial precedent, and a careful evaluation of the facts under consideration leads the Court to the inescapable conclusion that the change in status from Rule 154 carmen to journeyman carmen is independent of any achievement of proficiency or employer discretion. Journeyman carmen status is not contingent upon any test measuring proficiency; the 1040 day period is free from any formalized instruction or training; Rule 154 carmen who achieve carmen status do not receive any increase in wages or change in duties; as a matter of custom and practice, attainment of journeyman status after 1040 days is virtually automatic; and in each case, had the time spent in the performance of work as Rule 154 carmen in defendant's railroad's employ without material interruption because of sickness, furlough or leave of absence, plaintiffs would not have been laid off on December 17, 1974. Although the intent of Congress is clear, the application of the law to the facts is not without substantial difficulty. Nevertheless,

The legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. . . . And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. *Fishgold v. Sullivan Corp.*, 328 U.S. at 285, 66 S.Ct. at 1111.

The seniority rights of veterans would be defeated if the courts allowed employers to make benefits contingent on work time rather than seniority without careful scrutiny of the facts to determine if the "work requirement constitutes a bona fide effort to compensate for work actually performed . . . ." *Foster v. Dravo Corp.*, 420 U.S. at 99, 95 S.Ct. at 884. As the Eighth Circuit aptly stated in *Spearmon v. Thompson, supra*, "proficiency results from individual attainment without necessary regard to the lapse of time. Seniority advances with the calendar without necessary regard to the degree of proficiency." 167 F.2d at 631.

### IV.

The parties have stipulated that

[i]f, as plaintiffs herein contend, the Court finds that pursuant to the Vietnam Veteran's Military Readjustment Assistance Act of 1974, plaintiffs should have been accorded journeyman status upon their reemployment by defendant railroad upon return from military service, then the following amounts, together with interest at the prevailing rate, are owed each individual plaintiff from the date shown:

Dennis Cohn—$5,036.00—December 18, 1974

Daniel J. Mathers—$5,853.60—December 18, 1974

Ralph E. Gosnell—$6,421.43—December 18, 1974

Harry F. Miles—$2,693.48—December 18, 1974

Thomas P. Meduna—$7,341.57—December 18, 1974

Accordingly, judgment shall be entered for plaintiffs in the above amounts and defendant shall be ordered to adjust plaintiffs' seniority dates.

---

**3.** In *McKinney v. Missouri-Kansas-Texas Railroad Co.*, 357 U.S. 265, 273–74, 78 S.Ct. 1222, 1227, 2 L.Ed.2d 1305, the court recognized that the plaintiff had not had an opportunity to prove that by custom and practice plaintiff would have been automatically promoted had he remained in the employ of the company, and granted the plaintiff "leave to petitioner to amend his complaint to allege, if such be the fact, that in actual practice under the collective bargaining agreement advancement from group 2 to group 1 is automatic."