## PAYNE et al. v. WRIGHT AERONAUTICAL CORPORATION et al.

### Appeal of WRIGHT AERONAUTICAL CORPORATION.

### Appeal of INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, C.I.O., et al.

### Appeal of PAYNE et al.
### Nos. 9216, 9217, 9227.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 21, 1947.

Decided May 20, 1947.

FOLLMER, District Judge, dissenting.

———◇———

Andre Maximov, of New York City (Lum, Fairlie & Wachenfeld, of Newark, N. J., on the brief), for Wright Aeronautical Corporation.

Mortimer B. Wolf, of Witt & Cammer, all of New York City (Solomon Golat, of Newark, N. J. and Harold I. Cammer, of New York City, on the brief), for International Union.

Edw. V. Ryan, Asst. U. S. Atty., of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark N. J., on the brief), for James W. Payne et al.

Before MARIS and KALODNER, Circuit Judges, and FOLLMER, District Judge.

MARIS, Circuit Judge.

These are cross appeals from an order of the United States District Court for the District of New Jersey which adjudicated the rights of the petitioners under Section 8(e) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308(e). They present the same general question as that involved in the case of Gauweiler v. Elastic Stop Nut Corporation of America, 3 Cir., 162 F.2d 448. This court decides in that case that an employee absent in war service is bound by collective bargaining agreement made between the bargaining agent of the employees and the employer, provided the agreement is non-discriminatory as to veterans. The court holds in the Gauweiler case that a returning veteran employee has no right to displace a nonveteran union official of less service seniority who has top seniority by reason of the agreement.

Each of the original petitioners in the present case, James W. Payne, Anthony Frank, Michael J. Grinnan and Rocco Roy Pompeo, sought reinstatement by the respondent, Wright Aeronautical Corporation, to the position he had held with the Corporation prior to his induction into service or to a position of like seniority, status and pay. The respondent raised several defenses, among them that the reinstatement of these petitioners would be in violaion of the collective bargaining agreements in effect in the plants involved and contrary to the Act, that the petitioners were temporary employees and as such not entitled to the protection of the Act, and that the respondent's circumstances have so changed as to make it impossible and unreasonable for it to restore the petitioners to their respective positions or to positions of like seniority, status and pay.

The respondent impleaded the union involved, International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, C.I.O., and its Local 669, and by counterclaim sought a declaratory judgment against the petitioners and the union asking for an adjudication of the rights and liabilities of all parties under the Act and the collective bargaining agreements. The four cases were consolidated for trial. At the trial two additional veteran employees, Emil F. Tlusty and Mark J. Fitzpatrick, were impleaded by order of the district court on the theory that their rights were involved in the original proceedings.

The collective bargaining agreements referred to in the first defense were entered into by the respondent and the union during the period when the petitioners were in military service and they made certain changes in the prevailing rules governing seniority to be observed in laying off and rehiring employees in periods of slack work. The change made by the agreement of October 1, 1943 was to add union stewards to the list of union officials given top seniority during their term of office without regard to the actual time they were employed by the respondent. The agreement of December 4, 1945 specified that the top seniority thus given applied during lay-off periods only. The latter agreement also provided that an employee's seniority rights were limited to the last occupation in which he was classified upon the company's records and to those previous occupations in which he had at least six months of actual service as determined from the company's occupational records. While the prior agreements had stipulated for plant-wide seniority the actual practice in the plant had been to recognize such seniority only with respect to occupations in which the employee did have prior experience. Whether the practice in the plant prior to the 1945 agreement was to recognize such experience if of less than six months duration is not made clear by the evidence.

The district court dismissed the defenses that the petitioners were temporary employees and that it would be a hardship to reemploy them. It also dismissed the counterclaim. The court ruled, however, that the agreement giving union stewards at times of lay-off top seniority effective during their terms of office was inapplicable to the petitioners by reason of the rights which the Act accorded them as veterans. It concluded, therefore, that as veterans the petitioners were entitled to displace union stewards

who were junior to them in point of service despite the respondent's agreement with the union giving stewards top seniority and that this right extended to all occupations in which the veterans were qualified. There was no intimation by the court that a petitioner's qualification was to be tested by his classification on the company's occupational records.

The court also ruled, however, that it would order the reinstatement of a veteran in preference to a union steward only if the veteran had greater seniority than others, whether veterans or nonveterans, who were waiting for reinstatement in the same occupation. Because of this ruling the court did not actually order any of the four original petitioners to be reinstated. It awarded money damages to Payne and Frank with respect to a past period during which it found that they should have been assigned to work. All of the award to Payne and part of the award to Frank was based upon the court's finding that these petitioners should have displaced union stewards during the prior period. $413.14 of the award to Frank, however, is conceded by the respondent to be correct and is not involved in these appeals.

In the course of its investigation of the facts the court discovered that the intervening petitioners, Tlusty and Fitzpatrick, who were veterans, had seniority over Payne in their occupation. It developed that the interveners were second and third on the recall list and that three union officials junior to them in service seniority were working. But one Sanders, the man who was highest in seniority on the recall list, was a nonveteran. Faced with this dilemma the district court ordered that Tlusty should replace the first union official, that Fitzpatrick should replace the second, that Sanders, the nonveteran with greater seniority than Fitzpatrick, should then replace Fitzpatrick, and that the latter should then replace the third union official.

It will be seen that the court, in endeavoring to carry out what it regarded as the rule laid down by the Act, not only replaced two union officials with veterans in violation of the rules of seniority prescribed by the collective bargaining agreement but also actually replaced a third union official with a non-veteran who unquestionably was bound by the agreement and who clearly was not entitled to the preference which the court accorded him. This case thus presents a striking illustration of the utter impracticability of enforcing in the same plant two conflicting systems of seniority, as this court points out in the Gauweiler opinion. And yet that is the impossible task which employers must endeavor to carry out if the rule contended for by the petitioners were to be followed.

■ For the reasons stated in the opinion of this court in the Gauweiler case we hold that the district court erred in concluding that the provisions of the collective bargaining agreement giving union stewards top seniority were not binding on the petitioners.

We come then to the question whether the provisions of the 1945 agreement restricting seniority to those occupations in which the employee has had six months experience are binding on the petitioners. We have seen that the practice in the plant prior to their induction into the service was to restrict seniority to those occupations in which the employee had actually had experience but that it is not clear whether that experience was required to be of any specific length. The 1945 agreement specified a minimum of six months experience as the criterion. The question, therefore, is whether this provision unlawfully discriminates against a veteran employee who prior to his induction had some, but less than six months, experience in an occupation in which he claims seniority.

■ Two possible cases must be considered. The first is where the veteran employee had served for less than six months in the occupation in which he was serving at the time of induction into the armed forces and has served the remainder of the six months in those forces. In this situation it may fairly be presumed that but for his induction he would have continued his service in the occupation in question and would have acquired six months experience therein. We think it must be concluded that the subsequent requirement of six months service did under these circumstances directly discriminate against the veteran by

552

reason of his absence in the armed forces and is, therefore, invalid and unenforceable as to him.

█ The other case which must be considered is that of a veteran who at the time of his induction had served six months or more in the occupation in which he was then serving but previously had served in another occupation in the plant for a period of less than six months and now claims seniority in that prior occupation. The termination of that prior service short of six months may have been for any one or more of a variety of reasons but it obviously could not have been because of the employee's subsequent induction into the armed forces. Accordingly it cannot be said that in this situation the subsequent contract provision which stipulated for six months service as a prerequisite to seniority in the occupation operated to discriminate against the veteran employee by reason of his service in the armed forces. On the contrary he is treated in this case exactly as are all the other employees in the plant and as he would have been had he never been called to the military forces. It follows, we think, that the principle of the Gauweiler case is applicable to uphold the collective bargaining agreement in the latter situation although not in the former.

The order appealed from is reversed and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

FOLLMER, District Judge (dissenting).

The facts of this case are ably stated in the majority opinion and need no repetition; as to its legal conclusion, however, I am unable to agree.

The majority opinion, it seems to me, is predicated not so much on the legal interpretation of the pertinent statute as upon the consideration that the employer finds itself in a position of conflict between two distinct obligations, namely, the union contract and the veterans' statutory rights. It follows the majority opinion of this Court

in the Gauweiler case[1] where the Court while recognizing "the danger of pulling a judicial statement out of its context to support a conclusion on a question not directly before the Court"[2] detours other significant statements which in my opinion completely negative the conclusion reached by the majority of this Court.

The Supreme Court in the Fishgold case also said:

(1) "This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. * * * And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. Our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230, 167 A.L.R. 110. (Emphasis supplied.)

(2) "The 'position' to which the veteran is restored is the 'position' which he left plus cumulated seniority. * * *" 328 U.S. 275, 287, 66 S.Ct. 1105, 1112.

The Court furthermore said in Trailmobile Co. v. Whirls, 67 S.Ct. 982, 990, 91 L.Ed. —— in referring to its opinion in the Fishgold case:

(1) "* * * it (Fishgold case) also squarely held that he was given security not only against complete discharge, but also against demotion, for the statutory year. And demotion was held to mean impairment of 'other rights,' including his restored statutory seniority for that year. * * *" (Emphasis supplied.)

This statement followed the phrase, "he was not given so-called 'superseniority,'" which in my opinion clearly indicates that the Supreme Court was carefully seeking to avoid any application of the term "superseniority" to a situation where by action of the employer, agreements or otherwise,

[1] See majority opinion this case for Gauweiler citation.
[2] The Court was referring to what it terms "repeated expressions of view in the Fishgold opinion." Fishgold v. Sullivan Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110.

the veteran might suffer demotion, since in the Trailmobile case it also said:

(2) "It is therefore clear that Congress did not confer the rights given as incidents of the restoration simply to leave the employer free to nullify them at will, once he had made it. * * *" 67 S.Ct. 982, 990, 91 L.Ed. ——. And clearly recognizing the impact of the Labor Relations Act and specifically its salutary provisions relating to collective bargaining, the Court was careful to point out:

(3) "For the statutory year indeed this meant that the restored rights *could not be altered adversely by the usual processes of collective bargaining* or of the employer's administration of general business policy." 67 S.Ct. 982, 991, 91 L.Ed. ——. (Emphasis supplied.)

In this case, the situation is even stronger than that within the purview of the above statement because here the rights of the veteran were adversely effected by a collective bargaining agreement entered into not during the statutory year but prior thereto in the absence of the veteran while in the armed forces of his country. I say that the veteran was "adversely effected" because his position of seniority on the employment list of the company was definitely at least one point lower, which in this case as to two of the veterans meant the difference between employment and nonemployment.

I am in complete agreement with Judge McLaughlin's statement in his dissenting opinion in the Koury case,[3] and consider it equally applicable in this case, that

"The 'super seniority' referred to by the majority in connection with this veteran is not, * * * the super seniority condemned in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110 but is the 'extraordinary statutory security' given the veteran by Section 8 of the Selective Service Act of 1940 (54 Stat. 890 as amended)."

The majority opinion refers to "the utter impracticability of enforcing in the same plant two conflicting systems of seniority," and also to the "impossible task which employers must endeavor to carry out * * *."

If the employer does find himself in a dilemma, it is because he has attempted to do that which he had no right to do, namely, to enter into an agreement which disregarded the statutory rights of the veteran, and in his absence. It must be assumed that such agreement between the employer and the union was made with full knowledge of the provisions of the Selective Training and Service Act of 1940 [4] and that the contracting parties were fully aware that any such agreement must necessarily be read in the light of such existing law.[5]

Nor do we feel that employers are faced with an impossible task in the adoption of a formula which would not only be workable but thoroughly consonant with the views herein expressed.

Here is a situation where a non-veteran by his own agreement has waived his seniority position in favor of a union steward whose only seniority is that accorded him by such bargaining agreement; the steward, in effect, occupying the position surrendered to him by the non-veteran.

In passing it may be noted that the question is posed here only because of the injection into the employment line-up of the union stewards. Were it not for them reinstatement would be predicated entirely on seniority, veteran and non-veteran occupying their natural positions on the seniority ladder.

The stability of the jobs occupied by the respective union stewards depends entirely upon the relative positions on the ladder of

---

[3] Koury v. Elastic Stop Nut Corporation, 3 Cir., 162 F.2d 544, companion case to Gauweiler, supra.

[4] 54 Stat. 885, 50 U.S.C.A.Appendix, § 301 et seq.

[5] In the trial of Di Maggio v. Elastic Stop Nut Corp. of America, 3 Cir., 162 F.2d 546, Trial Testimony pages 35 and 36, comment of counsel for employer, with admirable candor, was: "May I say, your Honor, in connection with the observation which your Honor made a moment ago, that I would assume that all contracts are made subject to the law existing at the time when the contract was made. This agreement between the union and the company was made at the time when the Selective Service Act was in full force and effect. So I should imagine that the agreement would be read in the light of existing law."

seniority occupied by the veteran and the non-veteran, who under the terms of the contract has surrendered his position to the union steward.[6] The unvarying principle to be observed here is that at all times the veteran retains his original rung on the ladder, the non-veterans yielding their respective positions in accordance with the contract.[7] For each additional steward added to this picture the non-veterans must to that extent drop back in their respective order without disturbing the veterans on their respective rungs.

In the present case, we have three stewards with seniority predicated solely on the contract,—Sanders, a non-veteran, with top seniority aside from the contract, and then three veterans with successive seniority as follows, Tlusty, Fitzpatrick, and Payne.[8] Sanders yields his top position to union steward No. 1; Tlusty with second position would replace steward No. 2; and Fitzpatrick with third position would replace steward No. 3; Payne would be at the top of the recall list and if a fourth position were available, he would, of course, take it.[9]

I am of the opinion that the lower court was correct in reinstating the two veterans but that the formula he used in so doing was incorrect in two particulars, namely in the relative order of the positions established by him, and in attempting to reinstate a non-veteran in place of a union steward.

---

[6] For example, in clarification of the above rule, take the situations where there are one, two or three positions occupied by union stewards. If the position occupied by the one union steward is one that, under the contract, was yielded by a non-veteran with seniority superior to the veteran, the steward remains, the reason being that the steward is occupying the first or top rung of the seniority ladder which but for the contract would be occupied by the non-veteran, the veteran has suffered no demotion by remaining on the second rung. To place the veteran on the first rung would be to accord him super seniority. If, on the other hand, the non-veteran thus yielding his position to the steward was junior in point of seniority to the veteran, the veteran prevails, otherwise the veteran would be suffering a demotion.

This rule is equally applicable to situations involving any number of union stewards and is not effected by the relative positions of non-veterans and veterans on the successive rungs of the ladder of seniority.

One other situation should here be considered. Supposing the first five rungs of the ladder to be occupied as follows: non-veteran, non-veteran, veteran, non-veteran, veteran; the steward takes the place of the first non-veteran, who steps back to the second rung; the second non-veteran steps back to the fourth rung; the veteran occupying the third rung cannot be displaced by a contract to which he was not a party; the non-veteran occupying the fourth rung would take the sixth rung, leaving the second veteran on the fifth rung to which he is entitled.

[7] Assuming two jobs available and one union steward, a non-veteran with seniority aside from the contract greater than the veteran, and the veteran, the steward would retain the first position yielded to him by the top seniority non-veteran and the veteran would take the second position to which he would be rightfully entitled as occupying the second rung of the ladder. On the other hand, if the veteran had greater seniority than the non-veteran aside from the contract, the veteran would take the first position and the steward the second position, being the precise position on the ladder yielded by the non-veteran.

[8] No reference is made herein to the situations of Grinnan, Pompeo, and Frank since there were no appeals from the orders of the lower court dismissing the petitions of Grinnan and Pompeo and the order directing entry of judgment in favor of Frank, nor do their positions call for special comment.

[9] If, however, the above order had included a non-veteran on the fourth rung and Payne on the fifth, the second steward would take the job, otherwise, Payne would be accorded a super seniority.

I have discussed these various situations somewhat at length because I feel it will more clearly show the practical application of the only formula which according to my interpretation of the statute, in the light of the Fishgold and Trailmobile cases, can be properly applied so as to preserve the statutory rights of the veteran and at the same time give due and proper regard to the rights of the non-veteran, effected as they may be by the union contract to which he was a party.