**William L. BUNNELL, Plaintiff,**

**v.**

**NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND and Knudsen Brothers Dairy, Defendants.**

**Civ. A. No. 77–2616–MA.**

United States District Court,
D. Massachusetts.

March 18, 1980.

Charles K. Mone, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Gabriel O. Dumont, Jr., Grady & McDonald, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This action was commenced by the United States Attorney on behalf of the plaintiff, William L. Bunnell. The case arises out of the refusal of the defendants, Trustees of the New England Teamsters and Trucking Industry Pension Fund (Fund), and Knudsen Brothers Dairy (Knudsen), to credit Bunnell for his period of service in the armed forces for purposes of determining his pension rights. Jurisdiction is properly invoked under the Veteran's Reemployment Rights Act (Act), 38 U.S.C. § 2021, *et seq.* The parties have filed an agreed statement of facts.

The plaintiff, Bunnell, was first employed by the Brock Hall Dairy on or about May 26, 1944. He remained there until he was inducted into the Army on October 27, 1944. He was honorably discharged on December 18, 1945, for the convenience of the Government in order to enlist voluntarily on December 19, 1945. After almost three years, he was again honorably discharged on October 28, 1948. Within thirty days, he went

back to work for the Brock Hall Dairy. He continued to work for Brock Hall until April 26, 1974, when it was bought by Knudsen. Bunnell worked for Knudsen until he retired on January 1, 1978.

In 1949, Local 677 of the Teamsters Union began to represent Brock Hall employees, including the plaintiff. In 1958, the Fund adopted the Pension Plan under which Bunnell seeks past service credit for all four years of his military service. In 1970, Section 6, "Past Service Credit for Certain Active Military Duty" was added to Article III of the Pension Plan Rules and Regulations. Under Section 6, an employee received credit in computing pension benefits for time spent in active military duty during World War II. The Trustees have consistently interpreted this provision to deny past service credit for voluntary re-enlistment after V–J Day.

On September 6, 1974, Bunnell filed an application with the defendant Fund for a "minimum thirty year service pension." He was informed that he would not be awarded past service credit for his three years' voluntary military service between 1945 and 1948, and, therefore, he did not have the minimum thirty years of credited service necessary to retire. If he had received credit for the total time served in the military, he would have been eligible for a thirty year pension as of December, 1974. Because the Fund refused to credit his voluntary military service, Bunnell did not retire until January 1, 1978. He claims that under the Act, he should have received past service credit for his three years' voluntary re-enlistment. He instituted this action on August 29, 1977 against the Fund and Knudsen seeking monthly payments under the thirty year pension plan retroactive to May 1, 1975.

The matter is before the Court on the plaintiff's motion for summary judgment and the motion of the Fund to dismiss for failure to state a claim. The Fund argues that Bunnell's federal statutory right does not entitle him to receive past service credit under the terms of the pension plan because the Fund is an independent third party, not an employer subject to the Act. Knudsen opposes plaintiff's motion for summary judgment on the grounds that it would be "inequitable" to hold Knudsen liable for pension payments due under the Act because Knudsen paid all required premiums to the Fund and had no control over the Fund's denial of benefits.

The first question is Bunnell's entitlement to past service credit under the Act for his three years of voluntary re-enlistment. A person who wishes to resume his former employment after being inducted into the Armed Forces and satisfactorily completing military service must be rehired by his former employer, or the employer's successor in interest, to his former job or a comparable one. 38 U.S.C. § 2021(a)(2)(B)(i). Benefits are equally available to voluntary enlistees and to those inducted by draft. 38 U.S.C. § 2024(a). The Act provides:

> (b)(1) Any person who is restored to or employed in a position in accordance with the provisions of clause (A) or (B) of section (a) of this section shall be considered as having been on furlough or leave of absence during such person's period of training and service in the Armed Forces, shall be so restored or reemployed without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration or reemployment.

> (2) It is hereby declared to be the sense of the Congress that any person who is restored to or employed in a position in accordance with the provisions of clause (A) or (B) of subsection (a) of this section should be so resorted or reemployed in such manner as to give such person such status in the person's employment as the person would have enjoyed if such person had continued in such employment con-

tinuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment, or reemployment.

38 U.S.C. § 2021(b). The returning employee is entitled to all employment benefits as though he had never been gone. *Fishgold v. Sullivan Drydock & Repair Corporation,* 328 U.S. 275, 284–285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946).

▆▆▆▆ Pension benefits by their nature are perquisites of seniority protected under Section 2021 and a veteran's total time in the military must be credited under an employer's pension plan. *Alabama Power Co. v. Davis,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). The method of crediting service for purposes of determining eligibility for pension benefits in *Alabama Power* is nearly identical to the method involved here. The "true nature" of pension payments is a reward for length of service. 431 U.S. at 593, 97 S.Ct. at 2009; *see, Beckley v. Lipe-Rollway Corporation,* 448 F.Supp. 563 (N.D.N.Y.1978). Thus, Bunnell has a right under the Act to receive credit for all his military service time when his length of service in employment is computed.

The difficult question in this case is from whom Bunnell can obtain such credit: whether the Fund is subject to the Act, although it is not Mr. Bunnell's employer in the traditional sense, and whether Knudsen can be held liable to pay amounts due under the Act, although it has delegated its pension-paying function to the Fund through a collective bargaining agreement.

The Fund relies on the language of two provisions of the Act to argue that the statute creates rights in an employee only against his immediate employer. The Act states that a veteran who previously worked for a private employer must "be restored by such employer or the employer's successor in interest" to his former position or "to a position of like seniority, status and pay . . . unless the employer's cir-

cumstances have so changed as to make it impossible to do so." § 2021(a). Thus, the Act explicitly imposes an affirmative duty only upon the "employer." That term is not defined in the Veteran's Reemployment Rights Act.

The Fund also relies on Section 2022, which creates a private right of action. That section provides in pertinent part:

If any employer . . . fails or refuses to comply with the provisions of section 2021(a) . . . the district court . . . shall have the power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action . . . In any such action only the employer shall be deemed a necessary party respondent.

The Fund argues that this Court is without jurisdiction to entertain plaintiff's claim against it under Section 2022 because the statute authorizes the court only "to require such *employer* to comply . . ." (emphasis added). The Fund asks us to construe "employer" narrowly, allowing Bunnell to obtain relief only from Knudsen, and so to hold the Act imposes no obligation on a pension fund to accord to a veteran the retirement benefits he would be entitled to receive if he drew his pension directly from his employer, where the fund which is established for the benefit of employees pursuant to a collective bargaining agreement, is maintained by employers' contributions and is controlled by an independent board of trustees.[1]

▆▆▆▆ First, Bunnell's right to past service credit under the Act cannot be defeated by the collective bargaining agreement between the two parties from whom he seeks relief:

To be sure, a veteran's right to reemployment cannot be defeated by entering

---

1. *See,* Labor Management Relations Act, 1947, § 302(c)(5), 29 U.S.C. § 186(c)(5) (purpose and regulation of employee trust funds).

into inconsistent contractual obligations with a third party. *Moe v. Eastern Air Lines, Inc.*, 246 F.2d 215, 221 (5th Cir. 1957), *cert. denied*, 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958); *Trusteed Funds, Inc. v. Dacey*, 160 F.2d 413, 420 (1st Cir. 1947); *United States ex rel. Stanley v. Wimbish*, 154 F.2d 773 (4th Cir. 1946); *Salter v. Becker Roofing Co.*, 65 F.Supp. 633, 636 (M.D.Ala.1946). *Mowdy v. Ada Board of Education*, 440 F.Supp. 1184, 1192 (E.D.Okl.1977); *see also, Fishgold v. Sullivan Drydock & Repair*, 328 U.S. at 285, 66 S.Ct. at 1111; *Palmarozzo v. Coca-Cola Bottling Co. of New York, Inc.*, 490 F.2d 586, 592 (2nd Cir. 1973), *cert. denied*, 417 U.S. 955, 94 S.Ct. 3083, 41 L.Ed.2d 673 (1974); *Beckley v. Lipe-Rollway*, 448 F.Supp. at 566, 567. Therefore, Knudsen cannot be excused by the collective bargaining agreement from fulfilling its obligations under the Act as an employer. Although Knudsen cannot contract away the veteran's statutory rights, it may effectively transfer all of its duties and rights as an employer with respect to its pension-paying functions. The Act imposes liability on employers in the first instance, but it is possible that the Fund is Knudsen's "successor in interest" within Section 2021 for the limited purpose of determining and paying retirement benefits.

■ The language of the Act, its legislative history, and cases decided under it demonstrate that it is to be interpreted broadly. Section 2021(b)(2), quoted *supra*, leaves no question as to Congress' intent to assure that a veteran is not to be penalized for serving the country. In the *Alabama Power* case, the Supreme Court declared that a guiding principle for any interpretation of the Act was that:

"This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need . . ."

431 U.S. at 584, 97 S.Ct. at 2004, quoting *Fishgold v. Sullivan Drydock & Repair*, 328 U.S. at 285, 66 S.Ct. at 1111. *See also, Cohn v. Union Pacific Railroad Co.*, 427 F.Supp. 717 (D.Neb.1977), *aff'd*, 572 F.2d 650 (8th Cir.), *cert. denied*, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 132 (1978); *Schaller v. Board of Education of Elmwood Local School District*, 449 F.Supp. 30 (N.D.Ohio 1978).

■ The breadth of the Congressional mandate is underscored by the authority conferred by Section 2022 of the Act on district courts to fashion broad equitable remedies and on officials of the executive branch to aid a veteran in enforcing employment rights:

The district court . . . shall have the power . . . specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. Any such compensation shall be in addition to and shall not be deemed to diminish any of the benefits provided for in such provisions. The court shall order speedy hearing in any such case and shall advance it on the calendar . . . [T]he United States Attorney . . . if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof specifically to require such employer to comply with such provisions. No fees or court costs shall be taxed against any person who may apply for such benefits.

Actions under this section are equitable in nature. *Goodman v. McDonnell Douglas Corp.*, 456 F.Supp. 874 (E.D.Mo.1978), *aff'd*, 606 F.2d 800 (8th Cir. 1979). Remedies are to be fashioned so as to provide uniform results under the Act. *Peel v. Florida Department of Transportation*, 443 F.Supp. 451, 460 (N.D.Fla.1977), *aff'd*, 600 F.2d 1070 (5th Cir. 1979). Thus, this Court has a duty to provide a veteran with complete relief.

■ It is against this backdrop of broad legislative purpose and judicial discretion that we assess the merits of the Fund's argument that it has no duty to comply with the Act. First, addressing the effect

of Section 2022's provision that "only the employer shall be deemed a necessary party respondent," we conclude on the basis of legislative history and the plain meaning of the language that a plaintiff veteran is not barred from bringing an action against anyone other than the immediate employer. The provision was tacked on to the original 1940 veterans' rights statute by the Selective Service Act of 1948, ch. 625, Pub.L. No. 759, Title 1, § 9(d), 80th Cong., 2d Sess., U.S.Code Cong. & Admin.News, p. 630. The purpose of the addition was to make "technical . . . changes to bring the section more in line with judicial interpretation." 1948 U.S.Code Cong. & Admin. News, pp. 1989, 2004; Sen.Rep. No. 1268, Part VI, § 9(d). Prior to the amendment, defendant employers could move to implead or join unions, pension funds and employees situated similarly to the plaintiff, or they could move to dismiss for a veteran's failure to join such parties. Fed.R.Civ.P. 19(b). If those parties had been *necessary*, individual veterans would have been greatly discouraged from asserting meritorious claims by the cumbersomeness and expense of litigation.

■ However, the fact that the Fund is deemed an unnecessary party to Bunnell's action under § 2022 does not mean that it is an improper or impermissible party to the action. Rather, the "necessary party" language allows the plaintiff the choice of whether to sue anyone other than his immediate employer, such as his union or pension fund. It also deprives the employer of the right to bring in such parties or dismiss the action, although they might otherwise be found to be necessary under Rule 19(a) due to their interest in the result of the suit.

This interpretation is supported by the number of suits under the Act where unions have been allowed to participate as defendants, both before and after the "necessary party" language was added. In the *Fishgold* case, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, the union was a proper party because of the potential conflict between the statute and its collective bargaining agreement in awarding various benefits on the basis of length of service. *See also, Oakley v. Louisville & Nashville Railroad Company,* 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87 (1949) (union was allowed to intervene); *Payne v. Wright Aeronautical Corporation,* 162 F.2d 549 (3rd Cir. 1947) (employer impleaded union; seniority provisions of collective bargaining agreement which discriminated against returning veterans in violation of the Act were held unenforceable against such employees); and *Conner v. Pennsylvania Railroad Company,* 85 U.S.App.D.C. 223, 177 F.2d 854 (D.C. Cir. 1949), *cert. denied,* 339 U.S. 919, 70 S.Ct. 622, 94 L.Ed. 1343 (1950) (individual employees who would be adversely affected by the decision were not indispensable parties because railroad employees' union was a party to the action).

■ The more recent case of *Smith v. Industrial Employers and Distributors Association,* 546 F.2d 314 (9th Cir. 1977), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061, supports our conclusion that Section 2022 does not preclude Bunnell from suing the Fund. In the *Smith* case, which arose under the Veterans' Reemployment Rights Act, both the veteran's employer and the union which administered his pension plan were named as defendants, and relief was ordered primarily from the union by way of awarding the veteran past service credit under the pension plan for military service. Thus, the administrator of the pension plan, in this case a union, rather than an independent fund, was a proper party defendant.

Having concluded that jurisdiction over the Fund is not precluded by the "necessary party" language, we next address the question of whether the Fund is an "employer" or "successor in interest" within the Act, and is subject to this Court's jurisdiction under Section 2022. The Fund asserts that we should construe "employer" to include only one to whom the veteran provides services and from whom he receives wages.[2]

2. As discussed above, pension payments are a reward for length of service rather than deferred wages. *Alabama Power,* 431 U.S. at 593, 97 S.Ct. at 2009.

Bunnell argues that Knudsen, his employer in the traditional sense, has delegated certain aspects of the employment relationship, i. e., determination of pension eligibility and administration of the pension program, to the Fund, and that the Fund is therefore an employer under the Act for the purpose of providing returning veterans with the incidents of employment over which the Fund has control.

■ We agree that a pension trust fund may be an employer under the Act insofar as it determines eligibility and pays benefits, and must be held subject to the responsibility of an employer in performing those functions. Otherwise, veterans whose pensions were administered by trust funds would be. at a disadvantage compared to those whose immediate employers directly provide retirement benefits. They would have to sue their employers to recover any entitlement not specifically provided by the pension fund under a collective bargaining agreement. Congress could have intended no such disparity in treatment.

■ A careful examination of the facts in this case supports the conclusion that the defendant Fund is an employer. It does not merely make payments as they become due. To the contrary, its board of trustees exercises complete control over payments, setting standards for employee eligibility, determining whether a new employer may participate in the Fund, establishing the rate of contribution due from Knudsen and other "contributing employers," and investing the capital generated by the contributions so as to enable the Fund to meet its obligations to employees. No single contributing employer exercises any direct control over the Fund's activities; as a group, they elect four of the eight trustees. The other four are elected by the approximately twenty participating locals. Knudsen is without authority to make the Fund pay Bunnell amounts to which he is entitled under the Act but not under the Fund's Rules and Regulations. The trustees have broad discretion to amend the terms of the plan without approval of contributing employers. Contributors must sign a "Standard Form of Participation Agreement" which may subsequently be unilaterally modified by the trustees. From this arrangement we infer that the parties to the collective bargaining agreement contemplated that a covered employee would receive all of his pension benefits from the Fund. Knudsen has delegated all its rights of control over retirement benefits to the Fund. The Fund must therefore accept Knudsen's statutory obligations.

Although the Veterans' Reemployment Rights Act does not define "employer," legislation in related areas of labor law provides support for finding that a pension fund may be defined as the recipient's employer. Under the definitions of the Employee Retirement Income Security Act of 1974 (ERISA), and its predecessor, the Welfare and Pension Plans Disclosure Act, the Fund could be considered Bunnell's employer. 29 U.S.C. §§ 1002(5), 1002(9); 29 U.S.C. §§ 301(a)(4), 301(a)(8) (repealed in 1975 by ERISA). ERISA provides:

(5) The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity . . . (9) The term "person" means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization.

29 U.S.C. § 1002.

Similarly, under Title VII of the 1964 Civil Rights Act, labor unions, trustees and trusts may come within the statutory definition of "employer." 42 U.S.C. §§ 2000e(a) and (b).

The Supreme Court has adopted a broad definition of the employment relationship for purposes of the National Labor Relations Act, 29 U.S.C. § 151 et seq. In deciding whether newsboys were "employees" or

independent contractors, the Court rejected the narrower common law definition:

> To eliminate the causes of labor disputes and industrial strife, Congress thought it necessary to create a balance of forces in certain types of economic relationships. These do not embrace simply employment associations in which controversies could be limited to disputes over proper "physical conduct in the performance of the service." On the contrary, Congress recognized those economic relationships cannot be fitted neatly into the containers designated "employee" and "employer" which an earlier law had shaped for different purposes. Its Reports on the bill disclose clearly the understanding that "employers and employees not in proximate relationship may be drawn into common controversies by economic forces," and that the very disputes sought to be avoided might involve "employees [who] are at times brought into an economic relationship with employers who are not their employers." In this light, the broad language of the Act's definitions, which in terms reject conventional limitations on such conceptions as "employee," "employer," and "labor dispute," leaves no doubt that its applicability is to be determined broadly, in doubtful situations, by underlying economic facts rather than technically and exclusively by previously established legal classifications.

*N.L.R.B. v. Hearst Publications, Inc.*, 322 U.S. 111, 128–29, 64 S.Ct. 851, 859, 88 L.Ed. 1170 (1944) (footnotes and citation omitted).

The Fund refers to interpretations of Section 501(b) of the Landrum-Griffin Act, 29 U.S.C. § 501(b), in arguing that the Fund is misjoined because plaintiff's complaint fails to state a claim for relief against it. Under that statute, which permits suits only against "any officer, agent shop steward, or representative of a labor organization," local unions and an international union were not properly joined as defendants. *Sabolsky v. Budzanoski*, 457 F.2d 1245 (3rd Cir. 1972), *cert. denied*, 409 U.S. 853, 93

S.Ct. 65, 34 L.Ed.2d 96. However, the Landrum-Griffin Act specifies carefully the individuals who may properly · be sued. Clearly, a local or international union is an organization, and therefore cannot be an "officer," "steward" or "representative." The language of the Veteran's Reemployment Rights Act is not so restrictive. An "employer" or "successor in interest" is not specifically defined and may be an individual, a corporation or some other type of organization. Defendant's analogy is, therefore, unpersuasive. The Fund has provided us with no statute which defines "employer" so as to exclude trusts such as itself.

Equitable considerations also favor subjecting the Fund to the Act. The trustees drafted the offensive Section 6 in 1973, frustrating the broad and clearly stated purposes of the Act, which has remained essentially unchanged since 1948. Knudsen did not participate in drafting the regulation. If the Fund were not required to comply with the statute, an employer would either have to drop out of the Plan and provide retirement benefits directly in order to control the terms of eligibility, or reimburse veterans in Bunnell's position in a piecemeal fashion for the difference between amounts provided by a union's pension plan and amounts due under the statute. Either course of action would undermine the integrity of collective bargaining agreements and so frustrate federal labor policies. Further, this Court's remedial powers are broad under Section 2022, and holding the Fund liable is necessary to obtain a uniform result in allowing a veteran to recover his full statutory entitlement to pension payments from the entity which determines and pays his pension, be it an immediate employer or a trust fund to which the employer has delegated its pension functions.

Finally, we reach the issue of whether primary liability should rest on Knudsen or the Fund. Some of the factors discussed above are relevant here: Knudsen's lack of fault or control;[3] the Fund's

---

**3.** An employer's good faith may provide a defense to a veteran's claim under the Act. *See,* e. g., *Mowdy v. Ada Board of Education*, 440 F.Supp. 1184.

control of payments and eligibility determinations; and the difficulty of administering a piecemeal approach where individual employers make up the difference. It also would be inequitable to hold Knudsen liable for a pension policy over which it had no control when it has paid all the monies it earmarked for pension benefits over to the Fund. If Knudsen could sue the Fund under its agreements with the union or Pension Fund trustees for breach of their obligation to pay full pension benefits, we would foment needless litigation by placing primary liability on Knudsen. Finally, although this plaintiff could obtain complete relief from Knudsen because his claim is now for a fixed sum, in order to protect younger veterans, we must hold that the Fund is subject to the Act and that Section 6 is unenforceable insofar as it conflicts with the Act.

*Smith v. Industrial Employers and Distributors Association*, 546 F.2d 314, supports our conclusion, although the defendant Association, which was designated by the union to administer the pension plan, apparently did not raise the issue of whether it was an "employer" for purposes of jurisdiction and liability under the Act. The defendant employer there, as here, made contributions under a collective bargaining agreement to a pension plan. There the plan was established by the collective bargaining agreement, and may therefore have been subject to greater control by contributing employers. It denied any credit for military service in computing retirement benefits. The Court held that time spent in the military must be included in computing length of service, implying that it thus awarded Smith equitable relief against the administrator of the pension plan rather than against his employer.

*EEOC v. Colby College*, 589 F.2d 1139 (1st Cir. 1978), does not lead to the opposite result. The Court of Appeals rejected an employer's argument that sole liability for sex discrimination in the terms of a contributory pension plan rested with the administrator of the plan, an insurance company. There, however, the employer had determined the offensive pension formula which required women to pay higher premiums. Moreover, we do not here decide that Knudsen would not be liable if relief were unavailable from the Fund. We hold only that the appropriate remedy under all the circumstances is that the Fund compute service credit for veterans in accordance with the Veterans' Reemployment Rights Act rather than pursuant to Section 6 of its Rules and Regulations when the two conflict, and that it award Bunnell retroactive pension payments on the basis of that computation.

We reject the Fund's contention that Bunnell sustained no compensable loss because he continued to work from the time when he was wrongfully denied benefits in 1974 until he became eligible under the Fund's Rules and regulations in 1978. According to the defendant's theory, the plaintiff would have had to quit and sue in 1974, then, if he ultimately lost after pursuing litigation (which required three years in this case) while receiving no income, he would have to return to work for another three years in order to qualify for the thirty year pension. Because Bunnell chose to continue working, he lost three years of valuable free time and the pension payments which reward length of service. Such benefits are compensable under Section 2022, and may not be offset by the Fund against wages paid by Knudsen for the plaintiff's services.

In accordance with the foregoing, the defendant Fund's motion to dismiss must be denied and the plaintiff's motion for summary judgment allowed.

SO ORDERED.